# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Nautilus Insurance Company,

    Plaintiff

v.

Access Medical, LLC, et al.,

    Defendants

2:15-cv-00321-JAD-GWF

**Order Granting Plaintiff's Motion for Summary Judgment, Denying Defendants' Cross-motion for Summary judgment, and Entering Judgment, and Closing Case**

[ECF Nos. 32, 45]

    Nautilus Insurance Company seeks a declaration that it does not owe a duty to defend or indemnify its insureds, defendants Access Medical, LLC, Flournoy Management, LLC, and one of the companies' managing members Robert Clark Wood, II. Access, Flournoy, and Wood are defendants in a California state-court tort and contract action brought by Wood's former business partner, non-party Ted Switzer.[1] Nautilus moves for summary judgment;[2] defendants countermove for summary judgment and, alternatively, request that I delay my summary-judgment rulings.[3] Because defendants have not made the required showing for a summary-judgment delay under FRCP 56(d), I address the motions on their merits and I find that Nautilus owes no duty to defend in the underlying action. Accordingly, I grant Nautilus's summary-judgment motion, deny defendants' countermotion, enter judgment for Nautilus and against defendants, and close this case.[4]

---

[1] ECF No. 1.

[2] ECF No. 32.

[3] ECF No. 42. Defendants Access and Wood filed an opposition and countermotion for summary judgment, and Flournoy filed an opposition and joinder to Access and Wood's opposition and countermotion. ECF Nos. 43, 48.

[4] I find these matters suitable for disposition without oral argument. L.R. 78-2.

**Background**

**A.     The state-court lawsuit**

After their relationship soured, Wood's former business partner, Ted Switzer, filed a "Complaint for Enforcement of Limited Liability Company Member Information and Inspection Rights" in the Superior Court of California, County of Fresno, against Wood and Flournoy—the company that Wood and Switzer had formed to market and sell medical implants. In the course of that suit, Switzer filed the cross-complaint that is at issue in this case. In the cross-complaint, Switzer names Wood, Access, Flourney, and various third parties as defendants and asserts 31 claims either on behalf of Switzer individually or derivatively on behalf of nominal-defendant Flournoy.[5] In the cross-complaint, Switzer alleges that Wood misappropriated funds from Flournoy's bank account, that he did not receive the distributions that he should have received from Flournoy, and that Wood and Access improperly interfered with his current and prospective business relationships.[6]

**B.     The Nautilus policy**

Access held a policy with Nautilus during the relevant time period that named Flournoy as an additional insured.[7] Wood was also insured under the policy in his capacity as shareholder and manager of Access and Flourney.[8] In relevant part, the policy requires Nautilus to defend and indemnify its insureds for "personal and advertising injuries" resulting from claims arising from "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services[.]"[9]

---

[5] *See* ECF No. 36-5. I take judicial notice of Switzer's cross-complaint in the underlying California state-court action. FED. R. EVID. 201.

[6] *Id.* at ¶ 43.

[7] *See* ECF No. 36-9.

[8] *Id.*

[9] *Id.* at 22.

**C.     Nautilus agrees to defend under a reservation of rights and then files this lawsuit**

Access tendered defense of the cross-complaint to Nautilus, claiming that Switzer's four claims for interference with prospective economic advantage triggered Nautilus's duty to defend because these claims alleged facts supporting a possible defamation claim, which would constitute "personal and advertising injury" under the Nautilus policy.[10] After multiple refusals, Nautilus eventually agreed under a reservation of rights to defend Access, Wood, and Flourney and then filed this suit, seeking a declaration that it has no duty to defend or indemnify any of the defendants in the underlying action.[11]

Nautilus moves for summary judgment, arguing that none of Switzer's claims in the California suit triggers its duty to defend.[12] Defendants oppose Nautilus's summary-judgment motion and counter-move for summary judgment, arguing that Nautilus has a duty to defend them from—and indemnify them for—Switzer's claims for interference with prospective economic advantage. Alternatively, defendants ask me to delay my summary-judgment rulings under FRCP 56(d).[13]

**Discussion**

**A.    Summary-judgment standards**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[14] When considering summary judgment, the court views all facts and draws all inferences in

---

[10] ECF No. 41-20.

[11] ECF No. 1.

[12] ECF No. 32. Though Nautilus titled its motion a *partial* motion for summary judgment, it is more accurately construed as a motion for full summary judgment because it seeks summary adjudication on all four of its claims, and the complaint requests only declaratory relief and costs, so there is no damages issue.

[13] ECF No. 42 at 28. Defendants cite former Rule 56(f) but the provisions previously found at Rule 56(f) are now contained in FRCP 56(d).

[14] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

the light most favorable to the nonmoving party.[15]  If reasonable minds could differ on the material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed and the case must proceed to the trier of fact.[16]

If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[17]  The court may only consider properly authenticated, admissible evidence in deciding a motion for summary judgment.[18]

**B.    Defendants are not entitled to a summary-judgment delay under FRCP 56(d).**

Rule 56(d) provides "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence."[19]  To prevail on a Rule 56(d) request, the movant must show: "(1) that [she has] set forth in affidavit form the specific facts that [she] [hopes] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion."[20]  A Rule 56(d) motion "may be denied where the movant has been dilatory, or where the movant seeks irrelevant, speculative, or cumulative

---

[15] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[16] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[17] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[18] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[19] *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).

[20] *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998) (stating standard under former Rule 56(f)).

information."[21]

Defendants argue that they need additional discovery to fully respond to Nautilus's arguments because Switzer, his wife, his bookeeper, and doctors to whom defendant Wood allegedly made defamatory statements have not yet been deposed in the underlying action.[22] These depositions "will be helpful in ascertaining the alleged wrongful acts that ruined Mr. Switzer's reputation" and "will clarify Mr. Switzer's claims [in the underlying action] and whether the Nautilus policy provides coverage."[23] Nowhere in defendants' motion or their supporting affidavit do they identify the specific facts that they hope to elicit from these depositions, show that these facts exist, or explain why these facts are essential for them to resist summary judgment. Defendants also do not explain why they could not have deposed these defendants in connection with this lawsuit, and discovery closed well before Nautilus filed its summary-judgment motion.[24] Because defendants have not made the required showing under FRCP 56(d), their request for a delay of summary judgment is denied. I thus consider the summary-judgment motions on their merits.

**C.    Duty to defend**

"The duty to defend is broader than the duty to indemnify."[25] An insurer has a duty to defend unless "there is no *potential* for coverage."[26] The duty to defend arises whenever the insurer

---

[21] *Slama v. City of Madera,* 2012 WL 1067198, *2 (E.D. Cal. March 28, 2012) (citing *California Union Ins. Co. v. Am.*, 914 F.2d 1271, 1278 (9th Cir. 1990) (stating that, under former Rule 56(f), a district court may deny a request for further discovery if the movant has failed to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment)).

[22] ECF No. 42 at 28.

[23] ECF No. 41-21 at 2.

[24] Discovery closed on November 18, 2015, ECF No. 25 at 2, and Nautilus filed its motion (after the parties stipulated to extend the dispositive-motion deadline) on January 15, 2015.

[25] *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004) (en banc).

[26] *Id.* (quotation omitted) (emphasis in original).

"ascertains facts [that] give rise to the potential of liability under the policy"[27] and "continues throughout the course of the litigation."[28] To prevent an insurer from evading its defense obligations "without at least investigating the facts behind a complaint," any doubts about the insurer's duty to defend must be resolved in the insured's favor.[29]

### *1.   Switzer's cross-claims and the July 25, 2011, email*

Defendants contend that Switzer's four interference-with-prospective-economic-advantage claims, combined with an allegedly defamatory e-mail sent by a representative of Access, trigger Nautilus's duty. In relevant part, Switzer alleges that defendants engaged in "wrongful acts" that caused "various vendors to stop using Mr. Switzer's businesses and [to] use Access instead," which resulted in "the complete loss of business . . . and injury to the personal and business reputation of Mr. Switzer and Flournoy."[30] Switzer further alleges that Wood acted maliciously and "with the intent to injure [Switzer's] profession, business and emotional well-being and with a conscious disregard of [Switzer's] rights."[31] The complaint does not contain claims for slander, libel, or defamation or allege that defendants made any false statements about Switzer or his businesses.

On July 25, 2011, Jacquie Weide, a representative of Access and Flournoy, sent an e-mail to Cottage Hospital in California (one of the companies whose relationship with Switzer the defendants are alleged to have disrupted)[32] to sell Aphatec spinal implants.[33] Weide's e-mail indicates that she believes that two of the hospital's doctors were using Aphatec's implants but that their former

---

[27] *Id.* (quotation omitted).

[28] *Id.* (quotation omitted).

[29] *Id.*

[30] ECF No. 41-4 at ¶¶ 115, 116, 123, 129, 130.

[31] *Id.* at ¶¶ 110, 114, 121, 124, 128, 131.

[32] *Id.* at ¶ 126.

[33] ECF No. 41-5.

distributor is now banned from selling them, and she offers to provide a quote on the products.[34]  The e-mail does not name the banned distributor,[35] and Switzer does not reference the e-mail in his cross-complaint.

### 2. *I may consider the e-mail in determining whether Nautilus owes a duty to defend.*

The Nevada Supreme Court has never explicitly adopted or rejected the "four corners rule," which limits the duty-to-defend inquiry to a comparison between the allegations in the complaint and the policy's terms.[36]  District Judge Andrew Gordon recently considered this issue in *Andrew v. Century Surety Company* and *Allstate Property and Casualty Insurance Company v. Yalda.*  In *Andrew*, Judge Gordon acknowledged that the Nevada Supreme Court had never explicitly adopted the rule and concluded that the Nevada Supreme Court would likely apply the four-corners rule when the complaint raises the possibility of coverage but the insurer's own investigation suggests there is no possibility of coverage.[37]  He reasoned that, in this context, applying the four-corners rule appropriately errs on the side of resolving doubts about whether the duty to defend arises in favor of the insured.  By contrast, he declined to apply the rule in *Yalda* because the extrinsic facts in that case raised—rather than discounted—the possibility of coverage.[38]

I find Judge Gordon's analysis in *Andrew* and *Yalda* persuasive.  I predict that, where, as here, extrinsic facts known to the insurer may raise the possibility of coverage, the Nevada Supreme Court would likely not apply the four-corners rule to exclude those facts.  I therefore conclude that

---

[34] *Id.*

[35] In Weid's declaration authenticating the e-mail, she indicates that she was referring to Switzer. ECF No. 41-6.

[36] *Allstate Property and Cas. Ins. Co. v. Yalda*, 2015 WL 1344517, at *4 (D. Nev. Mar. 20, 2015 (Gordon, A.).

[37] *Andrew v. Century Surety Co.*, 2014 WL 1764740, at *4 (D. Nev. April 29, 2014) (Gordon, A.) (predicting that the Nevada Supreme Court would apply the four-corners rule only when the complaint raises the possibility of coverage but the insurer's own investigation suggests there is no possibility of coverage).

[38] *Yalda*, 2015 WL 1344517, at *4.

the duty to defend may be triggered by facts known to the insurer through extrinsic sources or by the factual allegations in the complaint.

### D. Switzer's cross-complaint and the July 25, 2011, e-mail did not trigger Nautilus's duty to defend under the policy.

In relevant part, the Nautilus policy requires Nautilus to defend defendants from claims arising from "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services[.]"[39] According to defendants, the e-mail "serves as prima facie evidence that one of the wrongful acts that Mr. Switzer allege[s] in his Cross-Complaint includes the email that allegedly slandered him."[40]

I agree with defendants that California law applies to the tortious conduct alleged in Switzer's complaint,[41] and Nautilus does not contend otherwise.[42] Federal courts sitting in diversity apply "state substantive law to state law claims, including the forum state's choice of law rules."[43] Nevada applies the most-significant-relationship test from the Restatement (Second) of Conflict of Laws § 145 to decide choice-of-law-issues in tort actions "unless another, more specific section of the Second Restatement applies to a particular tort."[44] A more specific section applies to the potential torts in Switzer's cross-complaint: § 149. Under section 149, in an action for defamation, the local law of the state where the publication occurs generally controls.[45] The July 25, 2011, e-mail that purportedly gives rise to potential defamation claims was sent to an administrator for a hospital located in California, where Switzer also lives and where his injuries would most likely be felt.

---

[39] *Id.* at 22.

[40] ECF No. 42 at 10.

[41] *Id.* at 15.

[42] ECF No. 32 at 27 (citing California law for elements of a disparagement claim).

[43] *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010).

[44] *General Motors Corp. v. Eighth Judicial Dist. Court of State of Nev.*, 134 P.3d 111, 116 (Nev. 2006).

[45] Restatement (Second) of Conflict of Laws § 149 (1971).

Thus, any potential claim for libel, slander, or disparagement from the e-mail is governed by California law.

Under California law, a disparagement claim "requires a plaintiff to show a false or misleading statement that (1) specifically refers to the plaintiff's product or business and (2) clearly derogates that product or business. Each requirement must be satisfied by express mention or by clear implication."[46] Libel and slander are both forms of defamation, and each requires proof of a false and unprivileged communication that injures the plaintiff's reputation.[47]

Switzer's cross-complaint—even when read in conjunction with the June 25, 2011—e-mail does not give rise to a potential claim for slander, libel, or disparagement (or include allegations of these offenses), and therefore does not trigger Nautilus's duty to defend under the "personal and advertising injury" provision of the policy.[48] Each of these torts requires a false statement, among other elements. Even assuming that the June 25, 2011, e-mail mentions Switzer by clear implication (he is not expressly named) defendants do not argue—let alone offer any facts to show—that the e-mail contains a false statement, i.e. that Switzer was not, at that time, banned from distributing Aphatec spinal implants as the e-mail states. Additionally, no where in Switzer's cross-complaint does he allege that defendants made any false statement about him in an effort to tortiously interfere with his business relationships, and the cross-complaint does not mention or incorporate the June 25, 2011, e-mail. Accordingly, Nautilus is entitled to a declaration that it owes no duty to defend defendants against Switzer's cross-complaint.

Defendants cite the Tenth Circuit's decision in *Yousuf v. Cohlmia* for the proposition that a claim for intentional interference with business relations is always broad enough to encompass

---

[46] *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 256 (Cal. 2014).

[47] *Shivley v. Bozanich*, 80 P.3d 676, 682–83 (Cal. 2003).

[48] Because I conclude that Nautilus owes no duty to defend, I do not reach its additional argument that it owes no duty to defend Flournoy because Flournoy is only a nominal defendant in Switzer's cross-complaint.

claims for defamation.[49] *Yousuf* has little, if any, persuasive value because it is a Tenth Circuit case applying Oklahoma's substantive law. *Yousuf* is also easily distinguishable. There, the plaintiff in the underlying suit asserted a defamation claim in conjunction with his tortious-interference claims—all stemming from the defendant's allegedly false and disparaging statements about plaintiff to the board of directors of a hospital where both doctors had operating privileges and to local media.[50] After the plaintiff withdrew his defamation claim in the underlying suit, the defendant's insurer claimed that it had no duty to defend him from or indemnify him for the intentional-interference claims. The district court held that the policy—which provided coverage for offenses arising from "the publication or utterance of a libel or slander or of other defamatory or disparaging material"—was broad enough to include the plaintiff's disparagement-based intentional-interference claims.[51] The Tenth Circuit affirmed, reasoning that the damages alleged in the underlying suit were covered by the policy because they all arose from the publication or utterance of disparaging material.[52] *Yousuf* thus stands for the narrow proposition that coverage for defamation claims may include intentional-interference claims that are based on allegations of defamation. But, unlike the plaintiff in the underlying suit in *Yousuf*, Switzer does not base his intentional-interference claims on allegations of defamation. So *Yousuf* has no application here.

Because I conclude that Nautilus owes no duty to defend, it likewise owes no duty to indemnify. The duty to indemnify arises when an insured becomes legally obligated to pay damages in the underlying action that give rise to coverage under the policy.[53] Thus, to trigger the duty to indemnify, the insured's activity and the resulting loss or damages must actually fall within the

---

[49] ECF No. 42 at 18–19.

[50] *Yousuf v. Cohlmia*, 741 F.3d 31, 34 (10th Cir. 2014).

[51] *Yousuf v. Cohlmia*, 718 F. Supp. 2d 1279, 1286 (N.D. Okla. 2010).

[52] *Yousuf*, 741 F.3d at 38.

[53] *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1157–58 (Nev. 2004).

policy's coverage.[54]  The defendants have not become legally obligated to pay any damages in the underlying action, let alone damages that actually fall within the policy's coverage.  Accordingly, Nautilus is also entitled to a declaration that it owes no duty to indemnify the defendants for damages awarded to Switzer on his cross-claims in the California action.

### Conclusion

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that **Nautilus's motion for summary judgment [ECF No. 32] is GRANTED and defendants' countermotion for summary judgment [ECF No. 45] is DENIED.**

Nautilus is entitled to a declaration that it owes no duty under policy number BN952426 to defend Access Medical, LLC, Flournoy Management, LLC, or Robert Clark Wood, II, against Switzer's cross-claims in *Switzer v. Flournoy Management, LLC, et al.*, Superior Court of California for the County of Fresno, Case No. 11 CE CG 04395.  The Clerk of Court is instructed to enter judgment for Nautilus and against defendants accordingly and CLOSE THIS CASE.

Dated this 27th day of September, 2016.

_____
Jennifer A. Dorsey
United States District Judge

---

[54] *Id.*