UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Nautilus Insurance Company,<br><br>    Plaintiff<br><br>v.<br><br>Access Medical, LLC, et al.,<br><br>    Defendant | Case No.: 2:15-cv-00321-JAD-BNW<br><br>**Order Granting in Part and Denying in Part Motions for Summary Judgment**<br><br>[ECF Nos. 168, 172, 178] |

    Nautilus Insurance Company sought a declaration that it did not owe a duty to defend or indemnify its insureds Access Medical, LLC, Flournoy Management, LLC, and one of the companies' managing members, Robert Clark Wood II. I granted that declaration but denied Nautilus's subsequent request for reimbursement of the fees and costs that it paid to defend its insureds under a reservation of rights. The Ninth Circuit affirmed my declaration but—after certifying the issue to the Nevada Supreme Court—reversed my denial of the request for reimbursement, held that Nautilus is entitled to it, and remanded for me to calculate the reimbursement amount. Nautilus now moves for summary judgment on that reimbursement.

    The insureds primarily argue that Nautilus is not entitled to any reimbursement because the appellate courts' holdings assumed that Nautilus never owed a duty to defend, and another court in this district has since determined in a separate lawsuit that Nautilus owed that duty as of July 28, 2017. Because the Ninth Circuit already held that Nautilus is entitled to reimbursement in this case, however, I am bound by that determination. And while I find that reimbursement in this case is limited to what Nautilus spent up through the filing of the complaint because my prior order declared that Nautilus had no duty to defend as of that time, Nautilus has not established the amount of that reimbursement under Nevada law. So I grant the motion in part—

only to hold that Nautilus is entitled to recover the reasonable fees and costs spent defending the insureds through February 24, 2015. But because I can't make the reasonableness determination on this record, I deny the motions without prejudice to Nautilus's ability to file a new motion that addresses the narrow issues of the reasonableness of its pre-complaint expenditures on the insureds' behalf, and pre- and post-judgment interest.

## Background

### I. The Underlying California Action

Wood and Switzer, who separately owned businesses that sold medical devices, joined forces and formed a new company, Flournoy, to sell medical implants. After their relationship soured, Switzer sued Wood and Flournoy in California state court and later filed a cross-complaint in that suit against Wood, Flournoy, and Access—one of the medical-device companies that Wood separately owned.[1] Switzer alleged that Wood misappropriated funds from Flournoy's bank account, that he did not receive the monetary distributions that he should have received from Flournoy, and that Wood and Access improperly interfered with his business relationships.[2]

### II. The Nautilus Insurance Policy and the Insureds' Initial Tender

Access held a Nautilus insurance policy that also covered Flournoy and Wood.[3] The policy required Nautilus to defend and indemnify its insureds for "personal and advertising injuries" resulting from claims arising from "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's

---

[1] ECF No. 36-5. I take judicial notice of the cross-complaint in the California action. *See* Fed. R. Evid. 201.

[2] *Id.*

[3] ECF No. 187 at 3.

2

goods, products, or services[.]"⁴  Access tendered defense of the cross-complaint under its Nautilus policy, theorizing that Switzer's state-court claims for interference with prospective economic advantage triggered Nautilus's duty to defend because those claims alleged facts supporting a possible defamation claim, which would constitute "personal and advertising injury" under the Nautilus policy.⁵  In seeking coverage, the insureds relied in part on an email from a representative of Access and Flournoy, Jacquie Weide, to one of the hospitals whose relationship with Switzer the defendants are alleged to have disrupted.⁶  Weide sent the email to sell Alphatec implants, and the email indicates that the hospital's former distributor—without naming Switzer—was banned from selling the implants.⁷  Nautilus agreed under a reservation of rights to defend Access, Wood, and Flournoy.⁸  At some point, Nautilus identified a potential conflict of interest and so offered to pay for independent counsel for the insureds.⁹

### III. This Action—*Nautilus I*

On February 24, 2015, Nautilus brought this action ("*Nautilus I*"), seeking a declaration that it did not owe a duty to defend the insureds.¹⁰  On the parties' motions for summary judgment, I concluded that Nautilus was entitled to that declaration.¹¹  I reasoned that the relevant claims in the underlying action required a false statement and that, "even assuming that the [Weide] email mentions Switzer by clear implication (he is not expressly named), defendants

---

⁴ ECF No. 36-9 at 22.
⁵ ECF No. 41-20.
⁶ ECF No. 41-4 at ¶ 126; ECF No. 41-5.
⁷ ECF No. 41-5.
⁸ ECF No. 187 at ¶ 5.
⁹ *Id.* at ¶ 11.
¹⁰ ECF No. 1.
¹¹ ECF No. 70.

do not argue—let alone offer any facts to show—that the email contains a false statement, i.e. that Switzer was not . . . banned from distributing" Alphatec implants.[12] The insureds then moved for reconsideration, and Nautilus moved to recover the fees and costs it paid for the insureds' defense.[13] I denied both motions.[14]

## IV. The Appeal

The insureds and Nautilus separately appealed those rulings to the Ninth Circuit,[15] which affirmed the grant of summary judgment and declaratory judgment in favor of Nautilus, holding that it had no duty to defend.[16] On the issue of Nautilus's entitlement to reimbursement of the insureds' defense costs, however, it found Nevada state law unclear.[17] So the panel stayed the proceedings and certified to the Nevada Supreme Court the question of whether an insurer is entitled to reimbursement under the circumstances of this case.[18] The Nevada Supreme Court answered in the affirmative.[19] It held that an insurer is entitled to reimbursement of fees and costs incurred defending an insured if three conditions are met: (1) "a court determines that an insurer never owed a duty to defend"; (2) "the insurer expressly reserved its right to seek reimbursement in writing after [a] defense was tendered"; and (3) "the policyholder accepted the defense from the insurer[.]"[20]

---

[12] *Id.* at 9.
[13] ECF No. 102.
[14] *Id.*
[15] ECF No. 105; ECF No. 107; ECF No. 108.
[16] ECF No. 144.
[17] *Id.*
[18] *Id.*; ECF No. 145.
[19] *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 691 (Nev. 2021).
[20] *Id.*

Applying the Nevada Supreme Court's newly minted rule to this case, the Ninth Circuit held that "[t]hose conditions are satisfied here, and thus Nautilus is entitled to reimbursement under Nevada law."[21] So it reversed my denial of reimbursement and remanded this case for me to calculate "how much reimbursement is 'necessary and proper' . . . ."[22]

## V.  The Re-tenders and *Nautilus II*

On July 28, 2017, the insureds re-tendered defense of the underlying action, citing deposition testimony that Switzer could sell Alphatec implants through Wood, which they claim contradicts Weide's email and so triggered a duty to defend.[23] Based on this new evidence, while the appeal was pending, the insureds requested that I consider a motion for relief from my declaration that Nautilus owed no duty to defend or indemnify.[24] In an August 11, 2017, order, I denied that motion, concluding that the new evidence was irrelevant because my prior order declared that Nautilus "owed no duty to defend based on the information it had at the time it filed this case."[25] I reasoned that my declaration did not address "whether [Nautilus] might owe a duty to defend in the future—such as if it were presented with new evidence that triggers coverage under its policy."[26] And I advised that "[t]he proper course would likely be for the [insureds] to file a new case based on these new events."[27] On December 29, 2017, I denied another, similar request by the insureds that I consider a motion for relief from judgment based

---

[21] ECF No. 149 at 3.
[22] *Id.* at 5–6.
[23] ECF No. 118 at 3.
[24] ECF No. 117.
[25] ECF No. 118 at 3.
[26] *Id.*
[27] *Id.*

5

on more new evidence, concluding that "the [new] evidence [was] not relevant to the issue [of] whether Nautilus ascertained facts **before it filed this case**."[28]

Wood and Access followed the course I suggested and filed breach-of-contract and other claims against Nautilus in a new lawsuit alleging that the new evidence triggered the duty to defend.[29] On the parties' motions for summary judgment in that suit, which I refer to as "*Nautilus II*," Chief U.S. District Judge Miranda Du held earlier this year—and after the remand of *Nautilus I*—that the deposition testimony "differ[ed] from the content of" Weide's email; that "[a]t the time [that the insureds] submitted the [July 28, 2017, re-tender, Nautilus] was on notice that [Weide's] [e]mail may have contained a false statement"; and so the July 28, 2017, re-tender "triggered the duty to defend."[30]

**VI.    Nautilus now moves for summary judgment on the issue of reimbursement.**

In light of the Nevada Supreme Court and Ninth Circuit's decisions, Nautilus now moves for summary judgment against the insureds on the lone-remaining reimbursement issue, seeking to recoup the fees and costs it expended on behalf of the insureds, plus pre- and post-judgment interest.[31] Although Wood and Access oppose the motion, Flournoy has not responded, nor has it retained counsel despite being ordered to do so nearly a year ago.[32] Nevertheless, I consider

---

[28] ECF No. 135 at 4 (emphasis in original).

[29] I take judicial notice of the proceeding in *Nautilus II*. Fed. R. Evid. 201. *See* ECF No. 1 in *Wood, et al. v. Nautilus Ins. Co.*, Case No. 2:17-cv-02393-MMD-VCF.

[30] ECF No. 315 at 23–24 in *Nautilus II*, Case No. 2:17-cv-02393-MMD-VCF.

[31] ECF No. 178; ECF No. 181.

[32] ECF No. 157.

the motions against all of the defendants on their merits and based on the well-established summary-judgement standards.[33]

### Discussion

**I.    Nautilus's Entitlement to Reimbursement**

**A.    The Ninth Circuit's holding that Nautilus is entitled to reimbursement is the law of the case.**

The insureds argue that Nautilus is not entitled to any reimbursement in light of Chief Judge Du's recent finding in *Nautilus II* that the July 28, 2017, re-tender triggered Nautilus's duty to defend.[34] They contend that this finding makes it impossible for Nautilus to satisfy the first condition that the Nevada Supreme Court laid out for reimbursement—that "a court determines that an insurer ***never*** owed a duty to defend."[35] But, as Nautilus points out, the Ninth Circuit has already determined that the Nevada Supreme Court's "conditions are satisfied here," "thus Nautilus is entitled to reimbursement."[36] And the Ninth Circuit was unmoved by the insureds' argument that the first condition was not satisfied because "there [was] still an open question regarding whether a duty to defend existed" based on the new evidence pending before Chief Judge Du.[37] Indeed, the panel held that the fact "[t]hat Nautilus may owe a duty to defend the [insureds] in the future is not before us" and that the Nevada Supreme Court's decision

---

[33] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (holding that the failure to oppose a motion for summary judgment does not permit the court to enter summary judgment by default).

[34] ECF No. 187 at 9–10.

[35] *Id.*; *see Nautilus*, 482 P.3d at 691 (emphasis added).

[36] ECF No. 149 at 3.

[37] ECF No. 80 at 1–2 in *Nautilus Ins. Co. v. Access Med., LLC, et al.*, Case No. 17-16265 (9th Cir. 2021).

"squarely controls."[38] Because that holding is the law of the case here, I cannot conclude otherwise or find that Nautilus is not entitled to reimbursement.[39] Rather, as the *Ninth Circuit* explained in *United States v. Luong* when describing the role of a district court on remand, my job is limited to "proceed[ing] in accordance with the [Ninth Circuit's] mandate."[40] Here, that mandate is to determine the "necessary and proper" amount of reimbursement.[41]

### B. That Nautilus's corporate affiliate made the payments is inconsequential.

The insureds argue that Nautilus is not entitled to reimbursement because the payments came from Nautilus Insurance *Group*, a "separate entity of unknown relationship to" Nautilus Insurance Company, the plaintiff here.[42] Nautilus points to checks that list both Nautilus Insurance Group and Berkley Insurance Company—and not Nautilus Insurance Company—as payees.[43] Because the Ninth Circuit's ruling that Nautilus Insurance Company is entitled to the reimbursement is the law of the case, as I discuss above, I decline to consider this argument. Even if I were to consider it, I would likely reject the insureds' hyper-technical argument. Nautilus's Rule 7.1 corporate disclosure statement lists Berkley Insurance Company as its grandparent company.[44] The fact that Nautilus's corporate affiliate's name is on the check would not preclude Nautilus from seeking reimbursement for these payments in this case.

---

[38] ECF No. 149 at 3 n.1.

[39] *United States v. Luong*, 627 F.3d 1306, 1309 (9th Cir. 2010) ("When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court.") (quoting *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1977)).

[40] *Id.*

[41] ECF No. 149 at 5.

[42] ECF No. 187 at 10.

[43] *See id.* at 9–10.

[44] ECF No. 3.

II.     **Amount of Reimbursement**

       A.     **Nautilus is entitled to reimbursement through the date it filed this complaint.**

The insureds argue that, even if Nautilus is entitled to reimbursement, it is entitled to reimbursement only for fees and costs incurred before the complaint was filed.[45] They point to the Nevada Supreme Court's first condition—that reimbursement is due only "[w]hen a court determines that an insurer never owed a duty to defend"—and my August 11, 2017, order holding that new evidence was irrelevant because "Nautilus's complaint sought a declaration that it owed no duty to defend based on the information it had at the time it filed this case."[46] They contend that my August 11, 2017, order found no duty to defend only up until February 24, 2015, (the day the complaint was filed), and that there is no court determination that Nautilus owed no duty after that date.[47]

Nautilus contends that the insureds misread my August 11, 2017, order.[48] It argues that my order was not based on a date but rather based on "the information and evidence available at the time Nautilus filed this action" and that this evidence "never changed until [the insureds] started submitting re-tenders."[49] Though that may be true, Nautilus points to no court finding that Nautilus did not have a duty to defend based on the evidence it had after the complaint was filed.[50] And my prior orders only declared that Nautilus had no duty to defend "before it filed

---

[45] ECF No. 187 at 10.
[46] *Id.*
[47] *Id.*
[48] ECF No. 192 at 7.
[49] *Id.*
[50] *See Nautilus*, 482 P.3d at 691 (holding that reimbursement is appropriate if "a court determines that an insurer never owed a duty to defend").

9

this case."[51]  Indeed, the insureds sought to introduce post-complaint evidence twice, and I declined to entertain it, concluding that evidence of what Nautilus knew after it filed the complaint was irrelevant because it "simply does not show that Nautilus had knowledge of facts **before it filed this case**."[52]  So the posture of this case—the one that went up on appeal and has been remanded for a narrow purpose—is one holding that, up to the February 24, 2015, filing of the complaint, *Nautilus* had no duty to defend.

Contrary to Nautilus's argument, the fact that the Ninth Circuit affirmed my declaratory judgment "because the underlying proceedings did not trigger Nautilus's duty to defend" does not mean that it can recover fees and costs that it paid on behalf of the insureds after it filed for declaratory relief.[53]  Nautilus also argues that limiting the effect of the declaratory judgment to the date the complaint was filed "would completely disincentivize insurers from" continuing to defend under a reservation of rights even after it files for declaratory relief as Nevada courts advise them to do.[54]  Although not entirely clear, Nautilus's argument appears to assume that such a limitation prevents it from recovering reimbursement for amounts that it incurred after the complaint was filed.  But Nautilus identifies nothing that bars it from seeking to recover in *Nautilus II* the expenses it incurred between the date of this complaint and July 28, 2017—which Chief Judge Du held in *Nautilus II* was the date a re-tender triggered a duty to defend.[55]  And considering that *Nautilus II* is still being actively litigated, it is possible that developments in that

---

[51] *See, e.g.*, ECF No. 135 at 4.

[52] ECF No. 135 (emphasis in original).

[53] ECF No. 192 at 7 (quoting ECF No. 144 at 3).

[54] *Id.* at 4–5.

[55] This is not intended as a determination about whether a procedural or other bar prevents Nautilus from doing so or whether such a request would or should be successful.

ongoing case could impact that ruling and undermine my reliance on any date beyond the complaint-filing date here. So for purposes of this *Nautilus I* action, I find that the proper cut-off date for reimbursables is February 24, 2015.

### B. Nautilus is entitled to reimbursement for the cost of independent counsel.

The insureds contend that Nautilus is not entitled to reimbursement for what it spent on independent counsel after it identified a potential conflict of interest between itself and the insureds.[56] They argue that, regardless of the duty to defend, Nautilus owed a separate duty to provide independent counsel under the Nevada Supreme Court's decision in *State Farm v. Hansen*.[57] But *Hansen* did not establish an independent-counsel duty separate from the insurer's contractual duty. Rather, it established that "to satisfy its contractual duty" to defend when a conflict of interest exists, an insurer must "permit[] the insured to select independent counsel" and "pay the reasonable costs of such counsel."[58] Indeed, as the district court noted in that case, "the parties agree[d] that [State Farm] had a contractual obligation to defend" but disagreed on whether "that duty to defend encompasse[d] appointment of independent [] counsel under Nevada law."[59] And the Nevada Supreme Court held that it did,[60] so the duty to provide independent counsel presupposes and is a part of the contractual duty to defend. Here, Nautilus paid for independent counsel to satisfy that potential duty to defend. Because that duty did not exist at least up through the filing of this complaint, Nautilus is entitled to reimbursement for its independent-counsel expenditure.

---

[56] ECF No. 187 at 11–12.

[57] *Id.*; *see State Farm Mut. Auto. Ins. Co. v. Hansen*, 357 P.3d 338 (Nev. 2015).

[58] *Hansen*, 357 P.3d at 341.

[59] *Hansen v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 6205722 at *5 (D. Nev. Dec. 12, 2012).

[60] *Hansen*, 357 P.3d at 341.

### C. Nautilus fails to demonstrate that its fees and costs are reasonable.

As noted above, my narrow task here is "to determine how much reimbursement is 'necessary or proper' to effectuate" the declaration that Nautilus owed no duty to defend based on the information that it had when it filed the complaint.[61] "[T]he reimbursement of defense costs paid by [an insurer] on the [the insureds'] behalf constitutes proper relief based on the declaratory judgment that [an insurer] was not, in fact, required to defend the [the insureds] under their policy."[62] The Nevada Supreme Court held that Nautilus could recover restitution in this action under a theory of unjust enrichment,[63] and Nevada law provides that the "proper measure of damages" in an unjust-enrichment case like this one is based on the customs of the local industry and "the reasonable value of the services."[64]

Nautilus contends that the fees and costs are presumptively reasonable because it paid them not knowing whether it would be reimbursed and because it had "every interest to dispute [the] accuracy or reasonableness" of the bills, relying on a California Court of Appeal case for that proposition.[65] But Nevada courts determine the "reasonable value of attorney[s'] services"

---

[61] ECF No. 149 at 5–6; 28 U.S.C. § 2202.

[62] *Omaha Indem. Ins. Co. v. Cardon Oil Co.*, 902 F.2d 40 (9th Cir. 1990) (unpublished). Although *Omaha* is unpublished, the Ninth Circuit cited *Omaha* in this case for this proposition. See ECF No. 149 at 6.

[63] *Nautilus*, 482 P.3d at 689.

[64] *Asphalt Prod. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995) (cleaned up); see also *Flamingo Realty, Inc. v. Midwest Dev., Inc.*, 879 P.2d 69, 71 (Nev. 1994) (holding that the district court should have considered the "customary method and rate of compensation in the [] industry").

[65] ECF No. 168 at 7 (citing *Jones v. Dumrichob*, 63 Cal. App. 4th 1258 (1998)).

based on the factors that the Nevada Supreme Court developed in *Brunzell v. Golden Gate National Bank*:

> (1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; [and] (4) the result: whether the attorney was successful and what benefits were derived.[66]

Although these factors were developed in the context of fee-shifting, Nevada courts apply them outside of the fee-shifting context to determine whether attorneys' fees are reasonable.[67] So I predict that the Nevada Supreme Court would require that an award of fees to Nautilus here be customary under local practices and reasonable under the *Brunzell* factors. Because Nautilus failed to discuss these factors as to the fees—or why the costs were reasonable under Nevada law—I deny its motions with leave to file a narrow new motion that cures this deficiency.[68]

## Conclusion[69]

IT IS THEREFORE ORDERED that Nautilus's motions for summary judgment **[ECF Nos. 168, 172, 178] are GRANTED in part and DENIED in part**. Nautilus is entitled to recover its reasonable fees and costs incurred to defend the insureds through February 24, 2015,

---

[66] *Brunzell v. Golden Gate Nat. Bank*, 455 P.2d 31, 33 (Nev. 1969).

[67] *See, e.g.*, *Gonzales v. Campbell & Williams*, 497 P.3d 624 (Nev. 2021) (unpublished) (affirming district court quantum-meruit award to attorney based on attorney lien because the court considered "locally customary fees that attorneys charge for similar work" and the *Brunzell* factors); *Valiente v. Behar*, 135 Nev. 732 (Nev. App. 2019) (holding that the district court should apply the *Brunzell* factors to determine how much prior counsel, who were retained on contingency-fee basis, were owed under a quantum-meruit analysis after their former client settled).

[68] Nautilus filed a motion against Access and Wood and a separate one against Flournoy. It may bring two respective motions again or consolidate its arguments into a single motion.

[69] Because I am denying Nautilus's motions without prejudice, I do not reach the amount of pre- or post-judgment interest, if any, that Nautilus is entitled to.

and I make no determination as to its entitlement to reimbursement for amounts it spent after that date. Because I cannot determine the reasonableness of Nautilus's expenditures on this record, Nautilus may file a new motion that addresses that narrow issue, plus any argument for applicable interest, within 14 days.

_____
U.S. District Judge Jennifer A. Dorsey
November 10, 2022